

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2004

# USA v. Thies

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Thies" (2004). *2004 Decisions.* Paper 726.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/726

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 03-1303

_____

UNITED STATES OF AMERICA

v.

WINTHROP THIES,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 98-cr-00301-2)
District Judge:  Hon. William H. Walls

_____

Submitted Under Third Circuit LAR 34.1(a)
May 3, 2004

Before:  SLOVITER, FUENTES and BECKER, Circuit Judges

(Filed: May 5, 2004)

_____

OPINION OF THE COURT

SLOVITER, <u>Circuit</u> <u>Judge</u>.

Winthrop Thies, who was found guilty by a jury of conspiracy to commit wire and mail fraud, wire fraud and interstate transportation of fraudulently obtained money, appeals from the District Court's order sentencing him to 30-months imprisonment on each count to be served concurrently. He requests that we vacate his sentence and remand for a new sentencing hearing.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## I.

Thies was convicted for his role in connection with a fraudulent mortgage transaction for two New Jersey properties. Also involved in the conspiracy were Lew Markus, the President of Lex Terrae, a New Jersey corporation, and John Hildebrandt, a former title insurance agent whose license was revoked after he misappropriated trust fund assets.

In January 1993, Markus purchased Equihab, a troubled company that owned 25 residential properties in New Jersey. Equihab had defaulted on its mortgage loans with Midlantic National Bank (hereinafter Midlantic), causing the bank to foreclose on the properties. Markus hoped to pay off the mortgages and sell the buildings for a profit. However, after purchasing Equihab for $25,000, Markus was in dire need of cash but he was unable to sell the New Jersey properties because of Midlantic's foreclosures.

To obtain cash, Markus schemed with Hildebrandt and Thies to sell false

mortgages for two of the New Jersey properties on the secondary mortgage market. Thies acted as an attorney for Markus and as President of First National Capital Corporation (hereinafter First National), another company owned by Markus that purportedly owned the mortgages on the two New Jersey properties. Thies arranged to sell the false mortgages to Levie Mortgage Investment Corporation for approximately $116,000. To complete the transaction, Markus, Hildebrandt and Thies drafted and signed, inter alia, false title and closing documents, which they sent by mail and fax. Levie Mortgage was not aware that Midlantic had foreclosed on the properties' real mortgages, and the value of the properties was mere fiction created to secure the cash Markus needed.

First National made four mortgage payments to Levie Mortgage but then stopped paying. When it investigated, Levie Mortgage uncovered the fraud. Thies, Markus and Hildebrandt were indicted. Markus and Hildebrandt pled guilty to charges stemming from their participation in the transactions at issue. Thies pled not guilty and was convicted by a jury. At trial, Thies contended that he was unaware that the New Jersey mortgages were fraudulent and that he signed the mortgage documents without reading them. To refute this defense, the Government introduced evidence of two prior uncharged mortgage schemes in which Thies allegedly participated.

Six months prior to the New Jersey scheme, Markus attempted to obtain a $300,000 loan using a New York City property as collateral. Because the United States Government had a $1,000,000 lien against the property, no legitimate title company

3

would issue a title commitment for the property. In need of money, Markus worked with Hildebrandt to create false title documents, which he used to induce the Winter Trust Group to loan him $300,000. The Government concedes that there is no evidence that Thies participated in this transaction.

Four months after securing the Winter Trust Group financing, Markus decided to obtain another loan using the same New York City property. He again had Hildebrandt prepare false title documents to secure a $250,000 loan. This time, however, Markus and Hildebrandt told Thies about the Winter Trust Group fraud and revealed that Hildebrandt had lost his title agent license for prior fraudulent conduct. Despite the illegal nature of the proposed transaction, Thies agreed to participate by providing an attorney opinion letter indicating that Normark Industries' $250,000 mortgage would be the property's first mortgage. In reality, this mortgage would be subordinate to the Government lien for $1,000,000 and the Winter Trust Group mortgage for $300,000. Based upon the false title documents and Thies' attorney opinion letter, Normark purchased the mortgage on the New York City property for $250,000.

Following the jury's guilty verdict, the District Court, as noted above, sentenced Thies to 30-months imprisonment on each of the four charges but permitted the sentences to run concurrently. This sentence was based upon the court's determination that Thies committed a level 17 offense in criminal history category II. The category II classification reflected a prior conviction in New Jersey state court. The offense level

calculation contained four components: a base offense level, enhancements for Thies' extensive involvement, relevant conduct and obstruction of justice. The Government and defendant agreed upon a base offense level of six (per U.S.S.G. § 2F1.1(a)), a two-level enhancement because Thies contributed more than just minimal planning (pursuant to U.S.S.G. § 2F.1(b)(2)(A)) and a six-level enhancement for the $116,994 financial loss caused by the Levie Mortgage scheme. Pursuant to § 2F1.1(b)(1)(K), however, the Government requested an additional four-level enhancement to reflect the $550,000 loss suffered by the Winter Trust Group and Normark Industries when they purchased the false New York mortgages. Thies objected to that enhancement, arguing that the court should not consider the New York frauds as relevant conduct when computing his sentence under the Guidelines. The Government also requested a two-level enhancement for obstruction of justice, which Thies later conceded was applicable. In short, the parties agreed Thies' base level offense of six should be enhanced two levels for extensive involvement and six levels for financial loss caused by the New Jersey fraud totaling a 14-level offense. They disagreed whether this level should be enhanced for relevant conduct and obstruction of justice. The Government argued that it should be enhanced to 20.

The court ultimately decided to apply a level 17 offense by attributing a three-level enhancement for financial loss to the New York fraud and declining to enhance the sentence for obstruction of justice. Thies appeals the judgment of sentence.

**II.**

We exercise plenary review over the District Court's interpretation and application of the Sentencing Guidelines, and review its factual findings for clear error. United States v. Geevers, 226 F.3d 186, 189 (3d Cir. 2000).

Thies contends that the District Court failed to (1) specify and properly apply the relevant conduct test it relied upon to enhance his sentence and (2) make factual findings sufficient to satisfy the preponderance of the evidence threshold. Appellant's Br. at 22.

a. Relevant Conduct Test

Under the Sentencing Guidelines, a district court judge is to consider "all acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction" as relevant conduct for purposes of sentence enhancement. U.S.S.G. § 1B1.3(a)(2) (emphasis added). The same course of conduct exists if the offenses "are sufficiently connected or related to each other to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, cmt. n.9(B). A common scheme or plan exists if the offenses are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, or similar modus operandi." U.S.S.G. § 1B1.3, cmt., n.9(A). In assessing whether offenses constitute a course of conduct or a common scheme, the court must consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3, cmt. n.9(B).

6

Although Thies cites no authority requiring the District Court to explicitly identify the relevant conduct test upon which it relies, Thies criticizes the court's failure to identify which test it applied. However, a review of the hearing transcript shows that the District Court was familiar with both the record and the Sentencing Guidelines. See, e.g., App. at 308, 310 (familiarity with trial record) and 311-12 (familiarity with Guidelines). Although the court did not expressly state which test it was applying, its language demonstrates that it relied upon the common scheme test. For example, the court's statement that Thies was "doing the same thing with the same people" shows the presence of multiple common factors between the New Jersey and New York frauds. App. at 309. These multiple common factors speak directly to the degree of similarity among the offenses. Additionally, the court described the frauds as "part of the same activity" because he found that the frauds were "more or less contemporaneous." App. at 332. In fact, the Levie Mortgage fraud occurred less than six months after the Normark fraud. Compare App. at 155 (dating Normark fraud as November 1992) with App. at 162-64 (dating Levie fraud as beginning in January 1993 and concluding in May of same year). It is apparent that the court understood the tests to be applied and properly considered the similarity, regularity and temporal relationship of the frauds when determining whether to enhance Thies' sentence for relevant conduct.

b. Preponderance of the Evidence

A district court must substantiate its conclusions about relevant conduct by a

7

preponderance of the evidence. United States v. Rudolph, 137 F.3d 173, 177 (3d Cir. 1998). Thies contends that the District Court did not make sufficient findings to support its conclusion that the Normark fraud was relevant conduct.

First, Thies offers no authority to support his assertion that the District Court's failure to explicitly state its reliance on the preponderance of the evidence standard supports a conclusion that the court failed to apply that standard. Moreover, Thies is incorrect that the court did not explicitly use that term. In fact, the court stated, "I find by a preponderance of the evidence available to me from the trial and from the presentence investigation that [Thies was] a knowing participant in the [Normark] fraud." App. at 346 (emphasis added).

Second, the court enhanced Thies' sentence by three levels rather than four, as requested by the Government, because it found that only Thies' participation in the Normark fraud was demonstrated by a preponderance of the evidence. Its refusal to enhance Thies' sentence for the Winter Trust Group fraud suggests that the evidence did not support Thies' participation in that fraud, a fact that the Government ultimately conceded during the sentencing hearing when questioned by the judge. See App. at 334.

Finally, the court referred to the record and paragraphs 16 through 21 of the pre-sentence investigation report as offering evidence that "Thies was involved in the New York activity which reflects his knowing those persons involved and his assisting those persons involved in getting if not the first, definitely the second mortgage on [the New

8

York City property]." App. at 332. The facts set forth in the pre-sentence report provide adequate support for the court's conclusion. There is simply no basis for us to find clear error in the District Court's factual findings.

## III.

## CONCLUSION

The transcript of the sentencing hearing demonstrates that the District Court was aware of and applied the appropriate test for determining whether the New York frauds constituted relevant conduct under the Sentencing Guidelines. It only enhanced Thies' sentence for the New York Normark fraud, not for the Winter Trust Group fraud, and the trial transcript contained evidence that supports the conclusion that the Levie Mortgage fraud and the New York Normark fraud were sufficiently connected to justify characterizing the Normark fraud as relevant conduct under the Guidelines. We will affirm the judgment of sentence.

---